UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GOLD TOWN CORP.,

Plaintiff,

-v-

UNITED PARCEL SERVICE, INC. and KENNETH RANSOM,

Defendants.

20 Civ. 6287 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case, removed from state court, involves claims by the uncompensated seller of a $2,350 gold necklace both against the parcel-delivery service that errantly shipped it and the buyer that eventually received but failed to pay for it. For the reasons that follow, the Court grants the plaintiff's motion to remand to state court.

## I. Background[1]

[1] The following factual account draws primarily from the Complaint, Dkt. 1, Ex. 1 ("Compl."), the attached exhibits, and the documents that it incorporates it by reference. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). The Court also considers documents filed in support of United Parcel Service's ("UPS") opposition to Gold Town's remand motion, specifically the declaration of UPS's counsel, Steven T. Rappoport, Esq., Dkt. 21 ("Rappoport Decl."). *See Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) (In determining subject-matter jurisdiction "courts are permitted to look to materials outside the pleadings. Such materials can include documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." (citations omitted)); *Arseneault v. Congoleum*, No. 01 Civ. 10657 (LMM), 2002 WL 472256, at *6 (S.D.N.Y. Mar. 26, 2002), *reconsideration denied*, 2002 WL 531006 (S.D.N.Y. Apr. 8, 2002) ("The Second Circuit . . . has said that, on jurisdictional issues, federal courts may look outside[the] pleadings to other evidence in the record" and therefore the court will consider "material outside of the pleadings" submitted on a motion to remand. (citation and quotation omitted)).

**A. Factual Background**

On December 14, 2019, Kenneth Ransom ("Ransom") purchased a 14-karat gold necklace on Amazon.com from Gold Town Corporation ("Gold Town") for $2,350.[2] Compl. ¶ 4. On December 16, 2019, Gold Town shipped the necklace to Ransom via UPS's "next day" shipping service. *Id.* ¶ 5.

On December 20, 2019, Ransom notified Gold Town that the necklace had not been delivered. *Id.* ¶ 6. Gold Town then called UPS, which told Gold Town that there would be a three-day delay. *Id.* ¶ 7. On December 22, 2019, Gold Town reported the information about the delay to Ransom. *Id.* ¶ 8. On December 27, 2019, Ransom told Gold Town that he still had not received the necklace and demanded a refund. *Id.* ¶ 9. On or about the same day, after Gold Town had called UPS "relentlessly," UPS informed Gold Town that the package was lost, but it later stated that it had found the package and would ship it back to Gold Town. *Id.* ¶ 11. After being notified by UPS that UPS was planning to ship the necklace back to Gold Town, Gold Town issued a full refund to Ransom of $2,350. *Id.* ¶ 12. The initial tracking number that Gold Town had received from UPS when it first sent the necklace also indicated that the necklace was being returned to Gold Town. *Id.* ¶ 15.

Notwithstanding UPS's statement to Gold Town that it would send the package back to Gold Town, Gold Town alleges that UPS, unbeknownst to it, later issued a new label and tracking number to the package containing the necklace—and, on January 2, 2020, delivered the package to Ransom. *Id.* ¶¶ 15—16. Gold Town further alleges that Ransom signed for the package and took possession of it, even though he had already received, from Gold Town, a full refund for the necklace. *Id.* ¶ 16. And, Gold Town claims, since receiving the necklace,

[2] Gold Town claims that the necklace's value has since appreciated and is currently worth approximately $5,000. Dkt. 15 ("Remand Mem.") at 2.

Ransom has failed to respond to Gold Town's emails requesting the return of the necklace or its monetary value. *Id.* ¶ 17. Finally, according to Gold Town, neither defendant has answered Gold Town's demand letters, which Gold Town states it sent to both UPS and Ransom. *Id.* ¶ 18.

**B. Procedural History**

On July 9, 2020, Gold Town brought suit in New York State Supreme Court against Ransom and UPS—suing Ransom for conversion, replevin, fraud, and unjust enrichment, and UPS for negligence and conversion. *Id.* ¶¶ 20, 26, 34–37, 43, 52. The same day, Gold Town served UPS with the Complaint. Dkt. 16. at 2.

On August 10, 2020, UPS removed the case to this Court based on this Court's federal-question jurisdiction. Dkt. 1 ("Removal Notice"). On August 12, 2020, the Court scheduled an initial pretrial conference and set a briefing schedule for any motion by Gold Town to remand the case to state court. Dkt. 4 ("Notice of Initial Pretrial Conference") at 2. The Court also directed the parties to file a letter stating: (1) "Whether all defendants who had been served at the time of removal joined in the notice of removal"; (2) "Whether the notice of removal was dated more than 30 days after the first defendant was served"; and (3) "If the action has been removed on the grounds of diversity jurisdiction, the citizenship of all named plaintiffs and all named defendants." *Id.* In the order, the Court advised Ransom "that if he chooses to consent to this case being heard in federal court, instead of state court, he or his attorney must do so in writing within 30 days of being served with notice of this lawsuit." *Id.* (citing 28 U.S.C. § 1446(b)(2)(B)).

On August 17, 2020, UPS filed a motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 7. On August 18, 2020, the Court set a briefing schedule for the motion to dismiss. Dkt. 10. On August 24, 2020, Gold Town filed a motion to remand the case, Dkt. 14, and a memorandum of law in support, Remand Mem. In

support of that motion, which is the subject of this decision, Gold Town argued that (1) UPS filed the removal notice 32 days after being served with the summons and complaint, and thus after the 30-day period set by 28 U.S.C. § 1446(b) for the filing of a removal action; (2) federal-question jurisdiction is lacking; and (3) UPS did not secure the required consent to removal of its co-defendant, Ransom. The same day, Gold Town moved to stay, pending the resolution of its motion to remand, the deadline for UPS's motion to dismiss and associated deadlines. Dkt. 16. The Court granted the stay. Dkt. 17.

On August 26, 2020, UPS filed a letter responding to the questions posed by the Court in its Notice of Initial Pretrial Conference. Dkt. 18 ("UPS Letter"). UPS stated that it had removed the action based on federal-question jurisdiction. UPS stated that it had been served with the summons and complaint on July 9, 2020 and that it had filed the notice of removal on August 10, 2020, which, it stated, was within the deadline that 28 U.S.C. § 1446(b) sets for the filing of removal actions. *Id.* at 1. UPS, finally, stated that its co-defendant Ransom had been served on August 5, 2020, and that UPS's counsel, on August 6, 2020, "spoke with Mr. Ransom over the phone and obtained his consent to the removal." *Id.*

On August 27, 2020, Gold Town filed a letter responding to the Court's inquiries. Dkt. 19 ("Gold Town Letter"). Gold Town argued that federal-question jurisdiction was lacking. As to the timing of its notice, Gold Town stated that UPS had been served on July 9, 2020, making its notice of removal on August 10, 2020, 32 days later, untimely. *Id.* Finally, as to UPS's co-defendant, Gold Town stated that Ransom had never answered its complaint, and that when Gold Town's counsel "spoke to Ransom on August 6, 2020, Ransom was very hostile towards UPS and accused UPS of theft of the package and forgery of his signature. Given Ransom's hostility it is very doubtful that Ransom would have given his consent to remove the

action." *Id.*

On September 8, 2020, UPS filed an opposition to Gold Town's motion to remand, Dkt. 20 ("Remand Opp'n"), and a supporting declaration of UPS's Counsel, Steven T. Rappoport, Esq. UPS argued that federal-question jurisdiction was present based on federal common law, Rappoport Decl. And Rappoport, in his declaration, stated that on August 6, 2020, he had spoken by phone with Ransom, who "verbally provided his consent to remove the action to federal court. Mr. Ransom also authorized UPS to represent his consent to the removal in its removal papers." *Id.* Rappoport further stated that on August 28, 2020, he sent a follow-up letter to Ransom to "notify him that pursuant to the Court's Notice of Initial Pretrial Conference, a copy of which was served upon him on August 13, 2020, he must also submit his consent to the removal in writing by September 4, 2020." *Id.* Rappoport added that a colleague had since attempted to contact Ransom "by telephone numerous times to discuss his written consent to the removal, but Mr. Ransom's telephone appears to be off, as it has gone straight to voicemail each time," and that counsel for UPS has been unable "to get in contact with Mr. Ransom, despite multiple good faith attempts." *Id.* UPS did not represent that it had ever received Ransom's written consent to removal. To date, the Court has not received any such written consent from Ransom.

On September 11, 2020, the Court adjourned the initial pretrial conference, pending the outcome of the motions before it. Dkt. 23. And, on September 15, 2020, Gold Town filed a reply in support of its motion to remand. Dkt. 25 ("Reply").

## II. Discussion

Gold Town makes three arguments why UPS's removal was improper. The first two, relating to the asserted untimeliness of UPS's notice of removal and lack of a question of federal law, are not persuasive. But the third argument carries the day: The Court holds, with Gold

Town, that UPS co-defendant Ransom's *written* consent to removal was required for the Court to have subject matter jurisdiction. Because UPS failed to obtain such consent, its removal was ineffective, requiring remand.

Briefly as to Gold Town's first two arguments:

Gold Town argues that UPS's notice of removal was untimely because it was filed 32 days after UPS was served with the summons and complaint, whereas 28 U.S.C. § 1446(b) requires a defendant to file a notice of removal within 30 days of receiving the summons and complaint. Gold Town's calculations are wrong. UPS was served on July 9, 2020. Thirty days from July 9 was August 8, 2020, which was a Saturday, and the notice of removal was filed the following Monday, August 10, 2020. Removal Notice, Ex. A. The federal rules allow for such a filing, although made 32 days after service, because the last day of the 30-day filing period was a Saturday. *See* Fed. R. Civ. P. 6(a)(1)(C) ("When the [computing time] period is stated in days or a longer unit of time . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

Gold Town next argues that federal-question jurisdiction, on the basis of which UPS removed this action, is lacking. *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). "[O]riginal federal jurisdiction is []available . . . [only if] it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13

(1983). "When federal common or statutory law so utterly dominates a preempted field that all claims brought within that field necessarily arise under federal law, a complaint purporting to raise state law claims in that field actually raises federal claims." *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998).

Although the Court need not conclusively resolve this argument given the alternative defect in UPS's removal, federal common law appears to sufficiently dominate the field here to supply federal-question jurisdiction. As UPS fairly notes, Gold Town's "complaint alleges claims for relief against UPS arising from the shipment of a package by air that puts UPS's limitation of liability for loss, damage and delay at issue." Remand Opp'n at 5. And it is well settled that "[w]here a contract governing transportation performed by air carriage limits the carrier's liability, an action seeking to hold the carrier liable for a lost, damaged, or delayed shipment is governed by and arises under federal common law." *Id.* at 5–6 (citing, *inter alia*, *Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 80 (2d Cir. 2007) ("[C]ases involving the liability of air carriers for lost or damaged freight are controlled by federal common law."); *Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 59 (2d Cir. 2000) ("[F]ederal common law continues to control the issue of liability of air carriers for lost or damaged shipments even after deregulation.")). On this basis, UPS argues, Gold Town's claims are governed by federal common law and this Court has federal-question jurisdiction, 28 U.S.C. § 1331, over Gold Town's claims against it. *Id.* (citing *Nippon Fire & Marine Ins. Co.*, 235 F.3d at 59 n.2 ("Since we conclude that this case arises under federal common law, federal jurisdiction over this case is properly based on 28 U.S.C. § 1331.")). Gold Town has not articulated a meritorious counter to this analysis.

As to the requirement of co-defendant consent to removal, in its Notice of Initial Pretrial Conference, the Court stated:

> The parties are advised that "[w]hen a civil action is removed solely under [28 U.S.C. § 1441(a)], all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Under Second Circuit precedent, each defendant must affirmatively consent to the Court's removal jurisdiction. *See Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 64–65 (2d Cir. 2012) (per curiam).

(alterations in original). In pursuing remand on this ground, Gold Town argues that Ransom did not properly consent to removal, because he did not give written consent. Reply at 5; Remand Mem. at 7.[3] Although the Court does not have any reason to question the declaration from counsel for UPS that Ransom provided verbal consent to removal, the Court finds that the lack of written consent is fatal to UPS's removal action.

The case law on this point is not uniform. As UPS notes, three circuits—the Fourth, Sixth, and Ninth—have held that removal is proper even without the written consent from all defendants, provided the removing defendant represents unambiguously that its co-defendants have consented to the removal. *See Mayo v. Bd. of Educ. of Prince George's Cnty.*, 713 F.3d 735, 742 (4th Cir. 2013); *Proctor v. Vishay Intertechnology, Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009); *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201–02 (6th Cir. 2004). UPS, however, does not contend with apposite Second Circuit precedent suggesting, but not explicitly requiring, the need for some writing, nor the cases in this District applying it.

In *Pietrangelo v. Alvas Corp.*, 686 F.3d 62 (2d Cir. 2012)—the case this Court cited in its pre-conference notice to counsel in this case—the Second Circuit stated that although it had

> not yet advised what form a consent to removal must take, . . . the remaining defendants must independently express their consent to removal. *See Ricciardi v.*

[3] Although Gold Town doubts UPS's representation that Ransom, by phone, verbally consented to removal, *see* Gold Town Letter at 1, the Court here assumes *arguendo* that Ransom did so.

> *Kone, Inc.*, 215 F.R.D. 455, 458 (E.D.N.Y. 2003); *Codapro Corp. v. Wilson*, 997 F. Supp. 322, 325 (E.D.N.Y. 1998).

*Id*. at 66. Notably, the two district court cases that *Pietrangelo* cited for the requirement that the other "defendants must independently express their consent" indicate that such consent must be expressed, in some manner, in writing. *See Ricciardi*, 215 F.R.D. at 458 ("The rule of unanimity requires that all named defendants file with court some form of unambiguous written evidence of consent to removal."); *Codapro Corp.*, 997 F. Supp. at 325 ("Accordingly, 'there must be some timely filed written indication from each defendant, or some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action.'" (citing *Getty Oil Corp., Div. of Texaco, Inc. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n.11 (5th Cir. 1988))).

The cases in this District, following *Pietrangelo*, have held that *written* consent from the non-removing co-defendants is required for a state-court action to properly be removed. *See, e.g.*, *Bedminster Fin. Grp., Ltd. v. Umami Sustainable Seafood, Inc.*, No. 12 Civ. 5557 (JPO), 2013 WL 1234958, at *7 (S.D.N.Y. Mar. 26, 2013) ("[I]n line with a body of clear and settled precedent, the Court holds that [e]ven where the removing defendant represents to the Court that the other defendants have consented to removal, the rule of unanimity is not satisfied unless the other defendants either sign the notice of removal or subsequently provide the Court with their unambiguous written consent to removal within the thirty-day period." (alterations in original) (quotations omitted)); *Metro. Transp. Auth. v. U.S. Fid. & Guar. Co.*, No. 14 Civ. 9059 (PAE), 2015 WL 1730067, at *4 (S.D.N.Y. Apr. 14, 2015) ("[T]he failure of any defendant to provide its written consent within the thirty-day period constitutes a fatal procedural defect in the removal procedure and warrants a remand of the case." (quoting *In re Vill. of Kiryas Joel*, No. 11 Civ. 8494 (ER), 2012 WL 1059395, at *3 (S.D.N.Y. Mar. 29, 2012))); *L.Y.E. Diamonds*

*Ltd. v. Gemological Inst. of Am. Inc.*, No. 16 Civ. 3766 (VSB), 2017 WL 1207839, at *5 (S.D.N.Y. Mar. 31, 2017) ("I agree with the courts in this Circuit that have found that something more is required for a defendant to express unambiguous consent to removal than merely advising the removing defendant that it consents to removal or filing documents that do not address consent on the federal docket."); *Russell v. S. Shore Indus. Ltd.*, No. 19 Civ. 8494 (VSB), 2019 WL 6888614, at *3 (S.D.N.Y. Dec. 18, 2019) (also requiring written consent from the removing defendant's co-defendant). The Court is unaware of contrary authority in this District, post-*Pietrangelo*.

As these cases reflect, the requirement of a writing helpfully avoids factual disputes as to whether the required consents of co-defendants have been secured. This case, in fact, supplies an excellent illustration of the value of requiring a writing. Based on its dealings with Ransom in which he purportedly expressed hostility to UPS, Gold Town doubts UPS's representation that Ransom consented to its proposal to remove. *See* Gold Town Letter at 1. Were this factual issue to remain in dispute, a fact-finding exercise, potentially culminating in an evidentiary hearing on this discrete point, could prove necessary. This Court therefore—reiterating its holdings, cited above, in this area—holds that some written memorialization of consent by co-defendant(s) is necessary for a defendant's removal to be effective.

In a footnote, UPS makes an alternative argument, to the effect that Ransom's consent was not required at all. Remand Opp'n at 8 n.2. UPS notes that 28 U.S.C. § 1441(c), applicable to cases that involve federal claims alongside state-law claims, does not require the consent to removal by a defendant against whom exclusively state-law claims lie. Instead, §1441(c) provides that the state-law claims, post-removal, are to be severed and remanded. *Id.* (citing *Brody v. Liffey Van Lines, Inc.*, No. 13 Civ. 5719 (CM), 2014 WL 2450807 (S.D.N.Y. May 29,

2014)). That is the case here, UPS argues, because "any claims against Mr. Ransom, an individual, for allegedly depriving Plaintiff of its property ownership rights necessarily arise[] under state law," he need not consent to the removal of the claims against UPS. *Id.*

This case, however, does not implicate § 1441(c). On the contrary, UPS, in removing, cited as the statutory basis for removal "28 U.S.C. § 1441(a)-(b)," not § 1441(c). Remand Opp'n at 3; *see* Removal Notice at 5 ("[T]his action is removable pursuant to 28 U.S.C. § 1441(a)[.]"). It first cited § 1441(c) in a brief footnote in its opposition. Remand Opp'n at 8 n.2.

And were removal proper here, § 1441(a), on which UPS relied in removing, would be the proper vehicle. Section 1441 states:

> (a) Generally.**--**Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
>
> (b) Removal based on diversity of citizenship . . .
>
> (c) Joinder of Federal law claims and State law claims--
>
> (1) If a civil action includes—
>
> (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and
>
> (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,
>
> the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).
>
> (2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

28 U.S.C. § 1441. Section 1441(a) thus textually applies to cases in which there is a state-law claim against a second defendant which, were the case removed on the basis of a federal-law claim, would fall within this Court's supplemental jurisdiction. Section 1441(c), in contrast, applies only to cases where the state-law claim would not fall within the Court's supplemental jurisdiction. That reading is in accord with analysis contained within the Supreme Court's recent decision in *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743 (2019). Although *Home Depot* did not concern that issue—it held that § 1441(a) does not permit removal by a third-party counterclaim defendant—the dissent (by Justice Alito, joined by three other Justices) reviewed the function and ambit of § 1441(c). It explained that § 1441(c) "addresses removal of a subset of claims (not an entire action) when a case involves some claims that would be removable because they arise under federal law and others that would not (because they involve state-law claims falling outside both the original *and* the supplemental jurisdiction of federal courts)." *Home Depot*, 139 S. Ct. at 1753 (2019) (Alito, J., dissenting).[4] *But see Brody*, 2014 WL 2450807. This Court similarly reads § 1441(c) as limited to the subset of removed cases involving both federal and state claims in which the Court would not have supplemental jurisdiction over the state claims.

Here, were the Court to have federal-question jurisdiction over Gold Town's claims against UPS, it plainly would have supplemental jurisdiction over Gold Town's claims against Ransom. And UPS does not argue to the contrary. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"). "For purposes of section

[4] The *Home Depot* majority did not controvert this point.

1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)). Gold Town's claims against both UPS and Ransom clearly arose from the same "nucleus of operative fact," to wit, the delivery to Ransom by UPS of the necklace he had ordered from Gold Town. *See id.* ("exercise of supplemental jurisdiction [i]s proper where plaintiff's state and federal claims arose 'out of approximately the same set of events'" (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002))). Therefore, § 1441(a), not § 1441(c), governs the removal of Gold Town's claims, and co-defendant Ransom's consent to removal was required.

This consent, however, was not obtained in writing, as the Court holds was required. The case was therefore not properly removed. Accordingly, the Court must remand it to state court.[5]

**CONCLUSION**

For the foregoing reasons, the Court grants plaintiff's motion to remand. The Clerk of Court is respectfully directed to terminate the motions pending at dockets 7 and 14, and to close this case.

SO ORDERED.

[5] Gold Town requests an award of fees and costs for this remand motion. Reply at 5. The Court denies that motion. Although the Court has held for plaintiff, the Court cannot find that the defense's arguments were objectively unreasonable. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140–41 (2005) ("[T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

PAUL A. ENGELMAYER
United States District Judge

Dated: February 2, 2021
New York, New York